J-A33044-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: L.M.A., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: M.W., FATHER | |
| Appellant | No. 1767 EDA 2014 |

Appeal from the Decree of May 16, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No.: CP-51-AP-0000326-2011

BEFORE:  LAZARUS, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.:                **FILED DECEMBER 31, 2014**

M.W. ("Father") appeals the May 16, 2014 decree that involuntarily terminated his parental rights to his son, L.M.A. ("Child").  After careful review, we affirm.

The record supports the following summary of the factual and procedural history.  L.A. ("Mother") and Father began a romantic relationship.  Father was married at that time.  Child was born in July 2010.  Mother also had a then-four-year-old child with another man.

While pregnant with Child, Mother contacted Adoptions from the Heart ("AFTH"), a child placement agency.  Mother told the adoption counselor, Michaelina Bendig, that the father of her child was a musician that she had met in New Orleans and that Mother did not know his name or have his

_____

[*]     Retired Senior Judge assigned to the Superior Court.

contact information. Prior to Child's birth, Mother went to two counseling sessions and selected an adoptive family.

When Child was born, Mother notified AFTH and Mother transferred custody to AFTH. Child was then placed with an adoptive family. Mother, however, did not sign the consent forms for the adoption, and after six days, Child was returned to Mother's custody.

While Child was in Mother's custody, Father spent some time with Child. Mother continued to contact AFTH to discuss adoption. Ms. Bendig also discussed parenting techniques with Mother. Ms. Bendig was concerned about adoption because Child was getting older and Ms. Bendig was concerned about the impact on Mother's other child if Child were removed from the home. However, Mother selected S.P. and A.H. ("Adoptive Family") to adopt Child. On May 24, 2011, Mother signed a consent to adopt. Mother also signed an affidavit stating that she was unaware of the identity of Child's birth father. On May 25, 2011, Adoptive Family took physical custody of Child. On July 26, 2011, they filed a petition for adoption. During the period in which Mother could revoke her consent, she did not do so. However, after that time ended, Mother attempted to revoke her consent.

In August 2011, Father contacted AFTH's counsel and alleged that he was Child's biological father. Counsel instructed Father to arrange a paternity test. In the meantime, Ms. Bendig attempted to contact Mother to inquire about Father's claim. Mother did not return Ms. Bendig's telephone

call. On September 19, 2011, Father contacted AFTH regional supervisor, Jeanne MaGee, to inquire about the paternity test. Father did not ask any questions about Child. The paternity test proved that Father was Child's biological father.

On September 13, 2011, AFTH filed a petition to confirm Mother's consent, a petition to involuntarily terminate Father's parental rights, and a petition to involuntarily terminate the unknown father's parental rights. Later, AFTH filed a petition to involuntarily terminate Mother's parental rights. The trial court held hearings on the petitions on June 6, 2012, June 13, 2012, and February 13, 2013. On May 16, 2014,[1] the court issued decrees terminating Mother's and Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b). On June 16, 2014, Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[2]

Father raises two issues for our review:

Whether the Hearing Court erred in terminating the parental rights of [Father] where [AFTH] failed to establish by clear and convincing evidence that, under the circumstances of this case

---

[1] The record does not indicate the cause of the delay between the initial hearings and the court filing its decree. However, Mother and Father changed counsel between the June 13, 2012 and the February 13, 2013 hearings. Additionally, it appears that Mother's counsel did not file a proposed findings of fact and conclusions of law until February 24, 2014.

[2] Mother also filed a notice of appeal. That appeal was docketed at 1782 EDA 2014 and is disposed of in a separate memorandum.

and during the relevant time period, he either made a deliberate decision to terminate the parent-child relationship or refused or failed to perform his parental duties?

Whether the Hearing Court erred in terminating the parental rights of [Father] where [AFTH] failed to establish, under the circumstance of the case, it best served the developmental, physical and semotional needs and welfare of [Child]?

Father's Brief at 5.

Our scope and standard of review are as follows:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

- 4 -

Father's parental rights were terminated pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b), which state:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> > \* \* \*
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

When terminating parental rights pursuant to subsection (a)(1), the court must consider the following:

> To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. *In re Adoption of R.J.S.,* 901 A.2d 502, 510 (Pa. Super. 2006). In addition,
>
> > Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a

child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

*In re Adoption of Charles E.D.M.,* 708 A.2d 88, 91 (Pa. 1998).

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*Id.* at 92 (citation omitted).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citations modified).

Parental duties have been defined as follows:

In *In re Burns,* 379 A.2d 535 (Pa. 1977), the Supreme Court stated:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

*Id.* 379 A.2d at 540 (citations omitted).

A parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise "reasonable firmness" in resisting obstacles placed in the path of maintaining the parent-child relationship. *In re Shives*, 525 A.2d 801, 803 (Pa. Super. 1987). This court has repeatedly recognized that "parental rights are not preserved ... by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her immediate physical and emotional needs." *In re Adoption of Godzak*, 719 A.2d 365, 368 (Pa. Super. 1998) (citation omitted).

*In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003) (citations modified; some quotation marks omitted).

Father argues that the evidence was not sufficient to prove that he intended to relinquish his parental rights or that he refused to perform parental duties. Father asserts that he provided financial support and had regular contact with Child, although there were extended periods without face-to-face contact with Child. Father also maintained that he communicated with Mother often. Father alleges that Mother's refusal to inform him that Child had been placed for adoption was the cause of his delayed contact with AFTH. Father says that he intended to provide a home for himself, Mother, and the two children. Father's Brief at 17-21.

Ms. McGee testified that, when he called to set up the DNA test, Father did not ask about Child's well-being or request to see or visit Child. N.T., 6/6/2012, at 20-21. Father did not contact Ms. McGee after he received the results of the paternity test. *Id.* at 34-35. Robert Tanenbaum, Ph.D., the psychologist who conducted the bonding evaluation, noted that, in his review

of Father's deposition, Father intended to return Child to Mother if Father obtained custody, and Dr. Tanenbaum opined that Father did not intend to be an active parent to Child. N.T., 6/13/2012, at 47.

Mother testified that Father was not present at the birth and he did not call to ask about the delivery or about Child. N.T., 6/13/2012, at 205-06. Mother also said that she did not trust that Father would be available to parent Child. *Id.* at 209. Mother confirmed that, at her deposition, she stated that Father would be gone for long periods of time. *Id.* at 212. Mother also testified that Father would visit once or twice a week, but there were gaps where he did not see Child. *Id.* at 214-15. Mother said that after Child left her home, Father called asking about Child and Mother told him that Child was with her family. N.T., 2/13/2013, at 30. Mother did not tell Father that Child was placed with Adoptive Family until Labor Day 2011. *Id.* at 35, 95.

Father testified that he provided financial support to Child and Mother. *Id.* at 104. However, because the support was in cash, Father produced no documents evidencing payments to Mother. *Id.* at 158-59.[3] Father planned to live with Mother and Child at some later point, but did not specify when. *Id.* at 105. Father testified that he saw Child every week. With regard to the three months between Mother placing Child and informing Father that

---

[3]   Father did produce a copy of one check made out to cash that had Mother's and Child's names in the memo line. *Id.* at 159.

Child had been placed, Father testified that Mother explained Child's absence by saying that Child was with Mother's family. *Id.* at 108. Father contacted AFTH after Mother told him about the adoption and he contacted an attorney. *Id.* at 113-15. Father expected the attorney to request visitation with Child, but the attorney did not do so. *Id.* at 115. Father testified that, if Child was returned to him, Father's twenty-year-old daughter would provide childcare when Father was working. *Id.* at 117. However, Father confirmed that during his deposition, he stated that he wanted Child to return to Mother's care and he would continue visiting and supporting Child financially. *Id.* at 140-41. Father testified that he only had Child on his own and without Mother one or two times when he took Child to a park. *Id.* at 119. At all other times, Father was only with Child in Mother's presence. *Id.* at 120. Father admitted that he never asked Mother when Child was born and did not know his birthdate at the time of the deposition. *Id.* at 154. At the deposition, Father was unaware what Child ate or what Child's favorite toy was and Father had never purchased a toy for Child. *Id.* at 156-57.

Because the petition to terminate Father's parental rights was filed on September 13, 2011, the six-month window extends back to March 2011 when Child was still in Mother's custody. The trial court engaged in the proper inquiry, and determined that Father failed to perform parental duties. Then the court looked at Father's explanation for that failure, his post-abandonment contact, and Child's best interests. Ultimately, the trial court

questioned Father's credibility. The trial court determined that Father could not have been as involved with Child as he claimed to be because Father admitted that he would go several weeks without seeing Child, the testimony about Father's involvement was contradictory, and because Father was evasive. Trial Court Opinion ("T.C.O."), 7/18/2014, at 4-5. Based upon these conclusions, the trial court found that Father did not perform any parental duties during the six months preceding the petition. *Id.* at 9. The court also found that Father did not take any steps to overcome any obstacles that were presented by Child's placement for adoption. Father did not request visitation or custody of Child and did not enquire about Child's well-being outside of the court proceedings. *Id.*

Based upon the record, AFTH demonstrated by clear and convincing evidence that Father had no more than a passive interest in Child and that he provided financial support to Mother. The record also supports the trial court conclusions regarding Father's credibility. It is hard to reconcile Father's testimony that he saw Child multiple times per week, but then did not question Mother's claims that Child was with her family when Father had not seen Child for three months. Further, Father made no effort in those three months to find Child, nor did he exert an effort to overcome obstacles once Father learned of the adoption. He waited several weeks to schedule the paternity test and did not make an active effort in the courts to obtain information about or visitation with Child. Father did not evidence a "continuing interest in the child," make "a genuine effort to maintain

communication and association with the child," or "exert himself to take and maintain a place of importance in the child's life." **C.M.S.**, *supra*. Therefore, the trial court did not err in finding AFTH met its burden in proving subsection (a)(1).

Father next claims that the trial court erred in finding that termination best served Child's interests, pursuant to section 2511(b). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." **In re K.M.**, 53 A.3d 781, 791 (Pa. Super. 2012). In **In re E.M.**, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. **In re K.M.**, 53 A.3d at 791.

**In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013). However, this Court has held that the trial court is not required to order a formal bonding evaluation by an expert. **In re K.K.R.-S.**, 958 A.2d 529, 533 (Pa. Super. 2008). Additionally, "[t]he mere existence of an emotional bond does not preclude the termination of parental rights." **In re A.D.**, 93 A.3d 888, 897 (Pa. Super. 2014). Instead, the court must determine whether severing that bond would be detrimental to the child. **Id.** at 898. Additionally, where

there was been little to no contact between a child and a parent, the trial court can conclude that there is no bond. ***In re Adoption of K.J.***, 936 A.2d 1128, 1135 (Pa. Super. 2007).

Father argues that the evidence presented was insufficient. Namely, Father complains that AFTH only provided evidence of the bond that exists between Child and Adoptive Family and the psychologist did not interview or speak with Mother or Father. Father contends that there was no evaluation of his bond with Child and, therefore, no evidence about the effect of severing that bond on Child. Father's Brief at 23-24.

Dr. Tanenbaum testified that Child was affectionate, engaged, and well-adjusted. N.T., 6/13/2012, at 37-40. Dr. Tanenbaum concluded from his observations that Adoptive Family and Child shared a strong, secure, and healthy bond. *Id.* at 41. Dr. Tanenbaum opined that removing Child from Adoptive Family's care would be disruptive to Child's development. *Id.* at 45, 51. From his review of Father's deposition, Dr. Tanenbaum did not believe that Father was engaged with Child and that Father did not intend to play an active role in Child's life. *Id.* at 47. Dr. Tanenbaum admitted that he did not directly assess Father. *Id.* at 50. Dr. Tanenbaum also opined that Father did not have an emotional connection with Child. *Id.* at 62.

The trial court found that Child was bonded with Adoptive Family and separating Child from Adoptive Family would be harmful to Child. T.C.O. at 10. The trial court also found that Father had not served as Child's parent. *Id.* at 11. The trial court found Dr. Tanenbaum to be credible. *Id.* at 10.

There was no evidence that Father had a bond with Child or that Child would be negatively affected by terminating Father's parental rights. Child bonded with Adoptive Family, who provided for Child's emotional, developmental, and physical needs. Based upon the record as a whole, we cannot conclude that the trial court erred in finding that adoption was in Child's best interest.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/31/2014